IN THE CIRCUIT COURT OF THE NINTH
JUDICIAL CIRCUIT IN AND FOR ORANGE COUNTY, FLORIDA

NORTH POINTE INSURANCE
COMPANY a/s/o HALL BROTHERS, INC.,
and HALL BROTHERS ROOFING, INC.,

      Plaintiff,                          CASE NO.: *10 CA- 24280*

vs.

SCOTTSDALE INSURANCE COMPANY,
UNITED NATIONAL INSURANCE COMPANY, and
HANOVER INSURANCE COMPANY,

      Defendants.

_____/

## COMPLAINT

COMES NOW, the Plaintiff, NORTH POINTE INSURANCE COMPANY as Subrogee

of HALL BROTHERS, INC. and HALL BROTHERS ROOFING, INC. ("NORTH POINTE"),

by and through undersigned counsel, and hereby sues SCOTTSDALE INSURANCE

COMPANY ("SCOTTSDALE"), UNITED NATIONAL INSURANCE COMPANY ("UNITED

NATIONAL"), and HANOVER INSURANCE COMPANY ("HANOVER") and alleges as

follows:

## GENERAL ALLEGATIONS

1.     The amount in controversy is in excess of this court's jurisdictional limit of

fifteen thousand dollars ($15,000.00). This court also has jurisdiction of this matter pursuant to

Florida Statute §86.011.

2.     NORTH POINTE is a foreign insurance corporation which is authorized to do

business in the State of Florida.

CASE NO.:

3.      NORTH POINTE was the successor in interest to all policies of insurance written by Queensway International Indemnity Company, which was a Georgia Insurance Company, licensed to and doing business in the State of Florida.

4.      HALL BROTHERS is a Florida Corporation with its principal place of business located at in Orange County, Florida.

5.      HALL BROTHERS ROOFING is a Florida Corporation with it principal place of business located at in Orange County, Florida.

6.      SCOTTSDALE is a foreign insurance corporation which is authorized to do business in the State of Florida.

7.      UNITED NATIONAL is a foreign insurance corporation which is authorized to do business in the State of Florida.

8.      HANOVER is a foreign insurance corporation which is authorized to do business in the State of Florida.

9.      Phillips Bay Condominium Association ("Association") is a not-for-profit corporation, organized and existing under Chapter 617, Florida Statutes, for the operation of Phillips Bay Condominium, in Orange County, Florida.

10.     Deluca Enterprises Group, Inc. d/b/a Deluca Homes is Florida Corporation, licensed to and doing business in the State of Florida. Deluca Group, Inc. is a foreign corporation, licensed to and doing business in the State of Florida. (These two entities are collectively referred to as "Deluca").

11.     Deluca was the developer and general contractor for the construction of Phillips Bay Condominium located in Orange County, Florida.

CASE NO.:

12.    HALL BROTHERS and HALL BROTHERS ROOFING contracted with Deluca and constructed roofs on the buildings at Phillips Bay Condominium.

13.    All defendants are joined herein because they issued a policy or policies of commercial general liability insurance to HALL BROTHERS and/or HALL BROTHERS ROOFING.

14.    Venue of this action is appropriate in Orange County, Florida, as it is the principal place of business of HALL BROTHERS and HALL BROTHERS ROOFING and that is the venue where all of the policies of insurance were entered into with HALL BROTHERS and HALL BROTHERS ROOFING.  In addition, venue is appropriate in Orange County pursuant to Fla. Stat. § 47.051 as that is the venue where the cause of action accrued.

## COUNT I – DECLARATORY JUDGMENT

15.    This is an action for declaratory relief regarding policies of insurance issued by Queensway International Indemnity Company ("Queensway"), NORTH POINTE INSURANCE COMPANY ("NORTH POINTE"), SCOTTSDALE INSURANCE COMPANY ("SCOTTSDALE"), UNITED NATIONAL INSURANCE COMPANY ("UNITED NATIONAL") and HANOVER INSURANCE COMPANY ("HANOVER") to HALL BROTHERS, INC. and HALL BROTHERS ROOFING, INC.

16.    UNITED NATIONAL issued a policy of insurance to HALL BROTHERS ROOFING bearing policy no. 17118680. This policy is a commercial lines policy.  The effective dates of coverage for this policy were April 6, 1999 to April 6, 2000. The renewal of this commercial lines policy was issued under policy number L7118680.  The effective dates of the

CASE NO.:

renewal policy were April 6, 2000 to April 6, 2001.  The subject UNITED NATIONAL

insurance policy is in the possession of UNITED NATIONAL.

17.     Queensway International Indemnity Company issued a policy of insurance to

HALL BROTHERS bearing policy no. QFL4082977-00. This policy is a commercial lines

policy. The effective dates of coverage for this policy were August 30, 1999 to August 30, 2000.

The renewal of this commercial lines policy was issued under policy number QFL4082977-01.

The effective dates of the renewal policy were August 30, 2000 to August 30, 2001.   See

Queensway insurance policy attached hereto as Exhibit "A".

18.     SCOTTSDALE issued a policy of insurance to HALL BROTHERS ROOFING

bearing policy no. BCS0001316.  This policy is a commercial lines policy.  The effective dates

of coverage for this policy were April 6, 2001 to October 15, 2001.  The subject SCOTTSDALE

insurance policy is in the possession of SCOTTSDALE.

19.     HANOVER issued a policy of insurance to HALL BROTHERS ROOFING, INC.

bearing policy no. ZDJ6601909. This policy is a commercial lines policy. The effective dates of

coverage for this policy were October 15, 2001 to October 15, 2002.   The renewal of this

commercial lines policy was issued under policy number ZDJ6601909.  The effective dates of

the renewal policy were October 15, 2002 to December 3, 2002.  The subject HANOVER

insurance policy is in the possession of HANOVER.

20.     NORTH POINTE issued six consecutive commercial lines policies to HALL

BROTHERS ROOFING bearing policy number 2094103239.  The initial policy bearing policy

number 2094103239 was a commercial liability umbrella policy for policy period December 20,

2002 to December 20, 2003. The subsequent five policies were commercial lines policies with

CASE NO.:

the same policy number, to wit:  renewal policy number 2094103239 for policy period December

20, 2003 to December 20, 2004; renewal policy number 2094103239 for policy period December

20, 2004 to December 20, 2005; renewal policy number 2094103239 for policy period December

20, 2005 to December 20, 2006; renewal policy number 2094103239 for policy period December

20, 2006 to December 20, 2007;   and renewal policy number 2094103239 for policy period

December 20, 2007 to December 20, 2008. See NORTH POINTE insurance policy attached

hereto as composite Exhibit "B".

21.    At all times material, Deluca acted as the developer and general contractor which

performed and supervised the construction of new buildings and improvements at the property

known as Phillips Bay Condominium located in Orange County, Florida, and pulled the permits

for said construction.

22.    Deluca  was  sued  in  an  action  in  the  State  of  Florida  by  Phillips  Bay

Condominium Association, Inc. alleging numerous construction defects allegedly caused by

Deluca's performance as developer and general contractor at the Phillips Bay Condominium

property in the case of *Phillips Bay Condominium Association, Inc. vs. Deluca Enterprises, Inc.*

*d/b/a Deluca Homes, Deluca Group, Inc. and Residential Warranty Corporation*, Case No.: 07-

CA-1474, pending in the Circuit Court of the Ninth Judicial Circuit in and for Orange County,

Florida.

23.    The Association, Plaintiff in the above referenced litigation, alleged construction

negligence against Deluca (Counts I & V), breach of contract against Deluca (Counts II & VI),

breach of implied warranty against Deluca (Counts III & VII), and violation of §553.84, Florida

Statutes, against Deluca  (Count IV & VIII).

CASE NO.:

24.     Deluca, Defendant/Third Party Plaintiff in the litigation referenced in Paragraph 22, previously filed a Second Amended Third Party Complaint in that litigation and alleged breach of subcontract against HALL BROTHERS (Count XI), contractual indemnity against HALL BROTHERS (Count XII), breach of subcontract against HALL BROTHERS ROOFING (Count XXXXV), contractual indemnity against HALL BROTHERS ROOFING (Count XXXXVI) and common law indemnity against HALL BROTHERS ROOFING (Count XXXXVII).

25.     The nature of the claims by the Association against Deluca and Deluca against HALL BROTHERS and HALL BROTHERS ROOFING related to consequential damages caused by HALL BROTHERS and HALL BROTHERS ROOFING and other subcontractors.

26.     NORTH POINTE on behalf of HALL BROTHERS and HALL BROTHERS ROOFING, negotiated a settlement agreement with counsel for the Association and Deluca to settle all claims they had against HALL BROTHERS and HALL BROTHERS ROOFING and/or other potential claims.

27.     The total amount of the settlement agreement was subsequently paid by NORTH POINTE on behalf of HALL BROTHERS and HALL BROTHERS ROOFING.

28.     At all times material hereto, SCOTTSDALE, UNITED NATIONAL and HANOVER had been provided with an opportunity to defend and/or indemnify HALL BROTHERS and/or HALL BROTHERS ROOFING in the underlying litigation and otherwise participate in the settlement agreement pertaining to alleged construction defects and resulting damages due to water intrusion at Phillips Bay Condominium. However, SCOTTSDALE, UNITED NATIONAL and HANOVER failed and/or refused to do so.

CASE NO.:

29.     At all times material hereto, the claims for damages settled by NORTH POINTE

on behalf of HALL BROTHERS and/or HALL BROTHERS ROOFING were covered, in whole

or in part, by the commercial general liability policy or policies issued by SCOTTSDALE,

UNITED NATIONAL and HANOVER.   All of those policies provided coverage for an

"occurrence" that took place within the effective policy period or periods.

30.     To the extent the settlement payment made by NORTH POINTE is covered by

the commercial general liability policy or policies issued by SCOTTSDALE, UNITED

NATIONAL and/or HANOVER, then NORTH POINTE is subrogated to all rights HALL

BROTHERS and/or HALL BROTHERS ROOFING may have against SCOTTSDALE,

UNITED NATIONAL and HANOVER.

31.     NORTH POINTE has obtained an assignment of rights from HALL BROTHERS

and HALL BROTHERS ROOFING to pursue its rights and remedies against SCOTTSDALE,

UNITED NATIONAL and HANOVER for their failure to participate in the defense of HALL

BROTHERS and/or HALL BROTHERS ROOFING as well as their failure to contribute to the

settlement agreement in light of the available insurance coverage.

32.     As such, NORTH POINTE is entitled to recover attorney's fees under Fla. Stat.

§627.428.

33.     Based upon the effective dates of coverage of the commercial general liability

policies issued by SCOTTSDALE, UNITED NATIONAL and HANOVER to HALL

BROTHERS and/or HALL BROTHERS ROOFING, NORTH POINTE believes

SCOTTSDALE, UNITED NATIONAL and HANOVER are obligated to indemnify NORTH

CASE NO.:

POINTE for a portion of the settlement proceeds paid by NORTH POINTE on behalf of HALL BROTHERS and/or HALL BROTHERS ROOFING.

34.     NORTH POINTE has performed all conditions precedent to filing this declaratory judgment action.

## THE POLICIES

35.     The policy or policies of insurance issued by SCOTTSDALE, UNITED NATIONAL and HANOVER to HALL BROTHERS and/or HALL BROTHERS ROOFING are commercial lines policies. All of these policies provide coverage for consequential damages caused by the insured's work or product.

36.     In the underlying litigation, the causes or sources of water intrusion were identified by expert witnesses and it was determined that construction defects were attributed, in part, to HALL BROTHERS and/or HALL BROTHERS ROOFING and such construction defects caused substantial consequential damages or damages to other property or work of other trades.

37.     HALL BROTHERS and/or HALL BROTHERS ROOFING were legally responsible for causing "property damage" as defined in each of the commercial general liability policies issued by SCOTTSDALE, UNITED NATIONAL and HANOVER at Phillips Bay Condominium.

38.     The "property damage" as defined in each of the commercial general liability policies issued by SCOTTSDALE, UNITED NATIONAL and HANOVER to HALL BROTHERS and/or HALL BROTHERS ROOFING was such that it constituted an "occurrence"

CASE NO.:

Page 9 of 11

and took place in the "coverage territory" and occurred during the applicable policy period for each carrier.

39. As such, SCOTTSDALE, UNITED NATIONAL and HANOVER were obligated, in whole or in part, to pay those sums that HALL BROTHERS and/or HALL BROTHERS ROOFING were legally obligated to pay as damages because of "property damage" to which each insurance policy applied.

40. There is currently a ripe and actual present controversy as one or more of the Defendants contest or otherwise disagree that the commercial lines policies issued by SCOTTSDALE, UNITED NATIONAL and HANOVER provided coverage for "property damage" caused by HALL BROTHERS and/or HALL BROTHERS ROOFING at Phillips Bay Condominium.

41. NORTH POINTE respectfully requests this Court take jurisdiction of the matter and adjudicate the rights and responsibilities of the parties with respect to the involved policies of insurance.

**WHEREFORE**, on the basis of the foregoing, NORTH POINTE INSURANCE COMPANY, respectfully requests this Court assume jurisdiction of this matter and adjudicate the respective rights and responsibilities of the parties pursuant to the commercial lines policy or policies issued by NORTH POINTE, SCOTTSDALE, UNITED NATIONAL and HANOVER to HALL BROTHERS and/or HALL BROTHERS ROOFING and to grant such other relief as the court deems appropriate in the circumstance.

CASE NO.:

## COUNT II – EQUITABLE SUBROGATION

42.    This is an action for equitable subrogation to recover damages in an amount in excess of $15,000.00, exclusive of costs, interest and attorney's fees.

43.    NORTH POINTE adopts and realleges the allegations set forth in Paragraph Nos. 1 through 14 and 16 through 30 as if fully set forth herein.

44.    All conditions precedent, if any, to the filing or maintenance of this action have been performed, have occurred or have been waived.

45.    NORTH POINTE reached a settlement agreement on behalf of HALL BROTHERS and HALL BROTHERS ROOFING to protect their interests.

46.    In reaching the settlement agreement on behalf of HALL BROTHERS and HALL BROTHERS ROOFING, NORTH POINTE did not act as a volunteer.

47.    NORTH POINTE was not primarily liable for the debt or obligations reached on behalf of HALL BROTHERS and HALL BROTHERS ROOFING in the settlement agreement. Rather, SCOTTSDALE, UNITED NATIONAL and HANOVER were primarily liable for the debt or obligations of HALL BROTHERS and HALL BROTHERS ROOFING.

48.    NORTH POINTE paid the entire settlement amount on behalf of HALL BROTHERS and HALL BROTHERS ROOFING.

49.    Equitable subrogation would not work any injustice to the rights of SCOTTSDALE, UNITED NATIONAL and HANOVER as those carriers provided insurance coverage for HALL BROTHERS and HALL BROTHERS ROOFING.

50.    NORTH POINTE preserved its right against SCOTTSDALE, UNITED NATIONAL and HANOVER to pursue equitable subrogation through an oral and/or written

CASE NO.:

Page 11 of 11

agreement for contributing to the settlement reached with the Association and Deluca on behalf

of HALL BROTHERS and HALL BROTHERS ROOFING.

51. NORTH POINTE has obtained an assignment of rights from HALL BROTHERS

and HALL BROTHERS ROOFING to pursue its rights and remedies against SCOTTSDALE,

UNITED NATIONAL and HANOVER for their failure to participate in the defense of HALL

BROTHERS and/or HALL BROTHERS ROOFING as well as their failure to contribute to the

settlement agreement in light of the available insurance coverage.

52. As such, NORTH POINTE is entitled to recover attorney's fees under Fla. Stat.

§627.428.

**WHEREFORE**, on the basis of the foregoing, NORTH POINTE INSURANCE

COMPANY, respectfully requests this Court enter judgment in favor of NORTH POINTE and

against SCOTTSDALE, UNITED NATIONAL and HANOVER based on equitable subrogation

and to grant such other relief as the court deems appropriate in the circumstance.

Respectfully submitted,

**METZGER LAW GROUP, P.A.**
4100 W. Kennedy Blvd., Suite 213
Tampa, Florida 33609
(813) 288-2650
(813) 288-2670 Fax
Attorneys for Plaintiff,
NORTH POINTE INSURANCE COMPANY


JOSEPH T. METZGER, ESQUIRE
Florida Bar No.: 894478



**NORTH
POINTE**

## INSURED: HALL BROTHERS, INC.

### POLICY #:  QFL4082977

STATE OF FLORIDA
COUNTY OF DUVAL

On this _10th_ day of _April_____, 2009 I attest that the attached document is a true, exact, complete and unaltered photocopy of North Pointe Insurance Company Policy No. _QFL 4082977_____, and to the best of my knowledge, that the photocopied document is neither a public record nor a publicly recordable document, certified copies of which are available from an official source other than a Notary Public.

> DIANNA L. SANTAPOLA
> Corlim# DD0771491
> Expires 4/25/2012
> Florida Notary Assn., Inc

_Dianna L. Santapola_____
Notary Public, State of Florida At Large
Dianna L. Santapola
Notary Public
My Commission Expires April 25, 2012
Commission No. DD0771491

## EXHIBIT
## A

# COMMERCIAL LINES
# POLICY



## Queensway International Indemnity Company
JACKSONVILLE, FLORIDA
(Home Office).

THIS POLICY CONSISTS OF:

- DECLARATIONS
- COMMON POLICY CONDITIONS
- ONE OR MORE COVERAGE PARTS. A COVERAGE PART CONSISTS OF:
  - ONE OR MORE COVERAGE FORMS
  - APPLICABLE FORMS AND ENDORSEMENTS

CPPJ-QIIC (11-99)

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 85

---

**IN WITNESS WHEREOF,** we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_Juanita S Hillis_
Secretary

_S S Tyto_
President

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1983

# QUEENSWAY INTERNATIONAL INDEMNITY CO.

JACKSONVILLE, FLORIDA

**COMMERCIAL PACKAGE POLICY**
**SUMMARY PAGE**

| Policy Number | Policy Period | |
|---|---|---|
| | From | To |
| QFL 4082977 00 | 08/30/1999 | 08/30/2000 |
| | 12:01 A.M. Standard Time at the described location | |

| Transaction |
|---|
| POLICY DECLARATION |

| Named Insured and Address | Agent |
|---|---|
| HALL BROTHERS, INC<br>7611 S ORANGE BLOSSOM TRAIL<br>ORLANDO FL 32809 | ATLANTIC COAST INS. AGENCY INC   0900211<br>1740 SARNO ROAD<br>MELBOURNE, FL  32935<br><br>Telephone:  407-254-9799 |

| Business Description<br>RESIDENTIAL ROOFER | Type of Business<br>CORPORATION | Audit Period<br>ANNUAL IF APPLICABLE |
|---|---|---|

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| COVERAGE PART DESCRIPTION | PREMIUM |
|---|---|
| General Liability | $1,717.00 |

|  |  |  |
|---|---|---|
| **FULL TERM POLICY PREMIUM** | $ | 1,717.00 |
| **DEPOSIT PREMIUM** | $ | 1,717.00 |
| **THE ABOVE INCLUDES THE FOLLOWING TAXES AND SURCHARGES** | $ | |
| **PRO RATA PREMIUM FOR ENDORSEMENT:** ☐ ADDITIONAL, ☐ RETURN | $ | |

**Forms applicable to all Coverage Parts:** See Attached Schedule

These Declarations together with the common policy conditions, coverage declarations, coverage form(s), and form(s) and endorsements, if any, issued, complete the above number policy.

Countersigned this _____ Day of _____ , _____ By _____

_____
Authorized Representative

Issued Date:  08/24/1999
MWS
CPPDEC 06 95

COMPANY

Page 1   of 1

**QUEENSWAY INTERNATIONAL INDEMNITY CO.**

JACKSONVILLE, FLORIDA

| | COMMERCIAL PACKAGE POLICY LOCATION SCHEDULE |
|---|---|
| Policy Number: | QFL 4082977 00 |
| Named Insured: | HALL BROTHERS, INC |
| Agent: | ATLANTIC COAST INS. AGENCY INC     0900211 |

## LOCATION ADDRESS SCHEDULE

Prem #     1

7611 S ORANGE BLOSSOM TRAIL
ORLANDO FL 32809

**Composite EXHIBIT "1" to Notice of Removal   Page 18 of 915**

**QUEENSWAY INTERNATIONAL   'DEMNITY CO.**

JACKSONVILLE, FLORIDA

| COMMERCIAL PACKAGE POLICY |
| SUB-LOCATION SCHEDULE |

| Policy Numl | . QFL 4082977 00 |
| Named Insured: HALL BROTHERS, INC | |
| Agent: ATLANTIC COAST INS. AGENCY INC | 0900211 |

# BUILDING SCHEDULE

Prem #    1         Bldg #      1
LIABILITY
148-ORANGE  725

# QUEENSWAY INTERNATIONAL INDEMNITY CO.

GENERAL LIABILITY
COVERAGE PART

JACKSONVILLE, FLORIDA

| Policy Number | Policy Period | |
|---|---|---|
| | From | To |
| QFL 4082977 00 | 08/30/1999 | 08/30/2000 |
| | 12:01 A.M. Standard Time at the described location | |

| Transaction |
|---|
| POLICY DECLARATION |

| Named Insured and Address | Agent |
|---|---|
| HALL BROTHERS, INC<br>7611 S ORANGE BLOSSOM TRAIL<br>ORLANDO FL 32809 | ATLANTIC COAST INS. AGENCY INC    0900211<br>1740 SARNO ROAD<br>MELBOURNE, FL  32935<br><br>Telephone:   407-254-9799 |

| Business Description<br>RESIDENTIAL ROOFER | Type of Business<br>CORPORATION | Audit Period<br>ANNUAL IF APPLICABLE |
|---|---|---|

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other than Products-Completed Operations) | $ | 1,000,000 |
| Products - Completed Operations Aggregate Limit | $ | 1,000,000 |
| Each Occurrence Limit | $ | 1,000,000 |
| Personal and Advertising Injury Limit | $ | 1,000,000 |
| Medical Expense Limit, any one person | $ | 5,000 |
| Fire Damage Limit, any one fire | $ | 100,000 |

## AMENDED LIMITS OF LIABILITY
Refer to attached schedule, if any.

## LOCATIONS OF ALL PREMISES YOU OWN, RENT OR OCCUPY
Refer to attached schedule.

## CLASSIFICATIONS
Refer to attached schedule

**TOTAL PREMIUM FOR THIS COVERAGE PART  $       1,717.00**

| Forms and Endorsements Applicable to this Policy |
|---|
| See Attached Schedule |

These Declarations  together with the common policy conditions, coverage part declarations, coverage part coverage form(s) and form(s) and endorsements, if any, issued , complete the above numbered policy.

Issued Date: 08/24/1999

GLDEC  06 95

**Composite EXHIBIT "1" to Notice of Removal   Page 20 of 915**
COMPANY                                                    Page 1     of  1

**QUEENSWAY INTERNATIONAL    IDEMNITY CO.**

JACKSONVILLE, FLORIDA

| GENERAL LIABILITY | |
|---|---|
| Policy Number: | QFL 4082977 00 |
| Named Insured: | HALL BROTHERS, INC |
| Agent: | ATLANTIC COAST INS. AGENCY INC       0900211 |

# COMMERCIAL GENERAL LIABILITY CLASSIFICATION SCHEDULE

Classification Description

| Loc | St | Terr | Code | Premium Basis | Exposure | Rate | Per | Cov | Premium |
|---|---|---|---|---|---|---|---|---|---|
| ADDL INSURED CLASS CODE | | | | | | | | | |
| 1 | FL | 999 | 49950 | | 0 | | N/A | AINS | $ 100.00 |
| ROOFING - RESIDENTIAL | | | | | | | | | |
| 1 | FL | 006 | 98678 | PAYROLL | 16,700 | 59.911 | 1000 | P/O | $ 1,001.00 |
| PLASTERING OR STUCCO WORK | | | | | | | | | |
| 1 | FL | 006 | 98449 | PAYROLL | If Any | 10.311 | 1000 | P/O | Subj. to Audit |
| CONTRACTORS -SUBWORK -BLDG CONST,REPAIR,ETC. -1,2 FAMILY DWG | | | | | | | | | |
| 1 | FL | 006 | 91583 | TOTAL COST | 208,000 | 0.352 | 1000 | P/O | $ 73.00 |
| 1 | | 999 | 98678 | PAYROLL | 16,700 | 11.573 | 1000 | PCO | $ 193.00 |
| 1 | | 999 | 98449 | PAYROLL | If Any | 6.269 | 1000 | PCO | Subj. to Audit |
| 1 | | 999 | 91583 | TOTAL COST | 208,000 | 1.684 | 1000 | PCO | $ 350.00 |

Issued Date: 08/24/1999

QUEENSWAY INTERNATIONAL INDEMNITY CO.

JACKSONVILLE, FLORIDA

COMMERCIAL PACKAGE POLICY
FORMS INVENTORY PAGE

| Policy Number: | QFL 4082977 00 | |
|---|---|---|
| Named Insured: | HALL BROTHERS, INC | |
| Agent: | ATLANTIC COAST INS. AGENCY INC | 0900211 |

# FORMS INVENTORY

### Policy Level Forms

```
IL0003    (06/89)
IL0017    (11/85)
```

| Commercial Fire | Commercial General Liability | Commercial Crime | Commercial Inland Marine | Commercial Auto |
|---|---|---|---|---|
| | IL0021    (11/94) | | | |
| | CG2010    (03/97) | | | |
| | CG0001    (01/96) | | | |
| | CG0055    (03/97) | | | |
| | CG2147    (10/93) | | | |
| | CG2149    (01/96) | | | |
| | CG2150    (09/89) | | | |
| | CG0220    (03/98) | | | |
| | GF-16     (11/97) | | | |
| | GF-63     (11/97) | | | |
| | CG0300    (01/96) | | | |
| | GF 48     (04/98) | | | |
| | CG2160    (09/98) | | | |

Issued Date:  08/24/1999

**Composite EXHIBIT "1" to Notice of Removal   Page 22 of 915**

FORMINV 06 95

IL 00 21 11 94

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF
  TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

IL 00 21 11 94          Copyright, Insurance Services Office, Inc., 1994          Page 1 of 2       □

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1994
IL 00 21 11 94
**Composite EXHIBIT "1" to Notice of Removal   Page 24 of 915**

POLICY NUMBER: QFL 40829 00

COMMERCIAL GENERAL LIABILITY
CG 20 10 03 97

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization:**

US HOMES CORPORATION

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**Who Is An Insured (Section II)** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

CG 20 10 03 97

Copyright, Insurance Services Office, Inc., 1996

Hart Forms & Services
Form No. 14-E032

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I - COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

### 2. Exclusions

This insurance does not apply to:

a. **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

Copyright, Insurance Services Office, Inc., 1994

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers Compensation and Similar Laws

Any obligation of the insured under a workers compensation, disability, benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

    **(a)** Employment by the insured; or

    **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

### f. Pollution

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

    **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

    **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

    **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

        **(i)** If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

        **(ii)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

    Subparagraph (d)(i) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Copyright, Insurance Services Office, Inc., 1994

**Composite EXHIBIT "1" to Notice of Removal   Page 27 of 915**

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g. **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage to Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Copyright, Insurance Services Office, Inc., 1994

**Composite EXHIBIT "1" to Notice of Removal   Page 28 of 915**

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

**b.** This insurance applies to:

**(1)** "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

**(2)** "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a.** "Personal injury" or "advertising injury":

**(1)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**Composite EXHIBIT "1" to Notice of Removal Page 29 of 915**

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

(5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

b. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

c. Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## COVERAGE C. MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

   (1) Agrees in writing to:

      (a) Cooperate with us in the investigation, settlement or defense of the "suit";

      (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

      (c) Notify any other insurer whose coverage is available to the indemnitee; and

      (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   (2) Provides us with written authorization to:

      (a) Obtain records and other information related to the "suit"; and

      (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

Copyright, Insurance Services Office, Inc., 1994

**Composite EXHIBIT "1" to Notice of Removal   Page 31 of 915**

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

   (1) "Bodily injury" or "personal injury":

       (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

       (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

       (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

       (d) Arising out of his or her providing or failing to provide professional health care services.

   (2) "Property damage" to property:

       (a) Owned, occupied or used by,

       (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

       you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

   (1) With respect to liability arising out of the maintenance or use of that property; and

   (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**Composite EXHIBIT "1" to Notice of Removal   Page 32 of 915**

**b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

   **a.** Medical expenses under Coverage C;

   **b.** Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   **c.** Damages under Coverage B.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

**5.** Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage A; and

   **b.** Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

**7.** Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

Copyright, Insurance Services Office, Inc., 1994

**Composite EXHIBIT "1" to Notice of Removal   Page 33 of 915**

**c.** You and any other involved insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

  **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

  **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

  **(1)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

  **(2)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

  **(3)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

  **(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

  **(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## 5. Premium Audit

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## 6. Representations

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

## 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

## 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

## 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

**1.** "Advertising injury" means injury arising out of one or more of the following offenses:

**a.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**b.** Oral or written publication of material that violates a person's right of privacy;

**c.** Misappropriation of advertising ideas or style of doing business; or

**d.** Infringement of copyright, title or slogan.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

**c.** All parts of the world if:

**(1)** The injury or damage arises out of:

**(a)** Goods or products made or sold by you in the territory described in **a.** above; or

Copyright, Insurance Services Office, Inc., 1994

**Composite EXHIBIT "1" to Notice of Removal   Page 35 of 915**

**(b)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

**(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

   **b.** Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

   **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

Copyright, Insurance Services Office, Inc., 1994

**Composite EXHIBIT "1" to Notice of Removal   Page 36 of 915**

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Copyright, Insurance Services Office, Inc., 1994

CG 00 01 01 96   □

**Composite EXHIBIT "1" to Notice of Removal   Page 37 of 915**

**b.** Does not include "bodily injury" or "property damage" arising out of:

   **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

   **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**15.** "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**16.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**17.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**18.** "Your product" means:

   **a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      **(1)** You;

      **(2)** Others trading under your name; or

      **(3)** A person or organization whose business or assets you have acquired; and

   **b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

   **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   **b.** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**19.** "Your work" means:

   **a.** Work or operations performed by you or on your behalf; and

   **b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

   **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   **b.** The providing of or failure to provide warnings or instructions.

Copyright, Insurance Services Office, Inc., 1994

COMMERCIAL GENERAL LIABILITY
CG 00 55 03 97

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT OF OTHER INSURANCE CONDITION (OCCURRENCE VERSION)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)

Paragraph **4.b.** of the **Other Insurance** Condition – **(Section IV – Commercial General Liability Conditions)** is replaced by the following:

4. **Other Insurance**

   b. **Excess Insurance**

   This insurance is excess over:

   (1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

      (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

      (b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

      (c) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of COVERAGE **A** (SECTION **I**).

   (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under COVERAGES **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

   (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

   (2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

Copyright, Insurance Services Office, Inc., 1996
**Composite EXHIBIT "1" to Notice of Removal   Page 39 of 915**
Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 21 47 10 93

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages):

This insurance does not apply to:

"Bodily injury" to:

  **(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

  **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY (Section **I** – Coverages):

This insurance does not apply to:

"Personal injury" to:

  **(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

  **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1992

Composite Exhibit "1" to Notice of Removal   Page 40 of 915

COMMERCIAL GENERAL LIABILITY
CG 21 49 01 96

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under paragraph 2., Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages) is replaced by the following:

This insurance does not apply to:

f. Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.